O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JS-6

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-8047 PSG (FFMx) | Date | March 12, 2009 |
|---|---|---|---|
| Title | Frank Romero v. California Department of Transportation | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(In Chambers) Order on Motion to Dismiss Complaint**

Before this Court is Caltrans' motion to dismiss the complaint. The Court finds the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local R. 7-15. After considering the moving papers, the Court hereby GRANTS Caltrans' motion.

I.      Background

Plaintiff Frank Romero ("Romero"), a Los Angeles artist, painted a mural entitled "Going to the Olympics" ("the mural") to celebrate the 1984 Olympics in Los Angeles, California. The mural is located on the Alameda Street underpass of the 101 Freeway. Defendant California Department of Transportation ("Caltrans") is the California State agency responsible for overseeing the state highway system, including, *inter alia*, the maintenance and repair of walls, barriers, and underpasses along the highways. Romero alleges that Caltrans received federal transportation funds and some of that money was provided to Caltrans so that it could maintain and repair murals, including those destroyed by graffiti. Romero claims that in 2007, Caltrans determined that his mural had been desecrated by graffiti and, instead of notifying him as required under the Visual Artists Rights Act of 1990 ("VARA"),  17 U.S.C. § 106A, Caltrans ruined the mural by painting over it with grey paint.

On December 5, 2008, Romero filed suit, asserting one cause of action for violation of his right of integrity under the VARA. Caltrans now moves to dismiss with prejudice Romero's complaint under Federal Rule of Civil Procedure (12)(b)(6) ("Rule 12(b)(6)") for failure to state a claim. Caltrans contends that dismissal is proper because it is immune from suit in federal court under the Eleventh Amendment.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JS-6

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-8047 PSG (FFMx) | Date | March 12, 2009 |
|---|---|---|---|
| Title | Frank Romero v. California Department of Transportation | | |

II.    Legal Standard

Pursuant to Rule 12(b)(6), a party may move to dismiss a cause of action if the plaintiff fails to state a claim upon which relief can be granted.  In evaluating the sufficiency of a complaint under Rule 12(b)(6), courts must be mindful that the Federal Rules require only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Nevertheless, even though a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (internal citations omitted).  Rather, the complaint must allege sufficient facts to raise a right to relief above the speculative level.  *Id.* (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).  However, detailed and "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007).

In deciding a 12(b)(6) motion, a court must accept all factual allegations in the complaint as true.  *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993).  Courts must also construe all reasonable inferences in the light most favorable to the plaintiff.  *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).  To further the inquiry, courts may consider documents outside the pleadings without the proceeding turning into summary judgment.  *See Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir. 1994), *reversed on other grounds*.  A document, however, may be considered only if it is alleged in the complaint, and its authenticity is not questioned.  *See id.*

III.    Discussion

Romero asserts one cause of action for violation of his right of integrity under VARA. Caltrans takes the position that this claim should be dismissed because it is a California state governmental agency and, as such, is immune from suit in federal court under the Eleventh Amendment of the United States Constitution.  Romero, however, argues that the Eleventh Amendment does not operate as a bar to his suit because Caltrans has waived his sovereign immunity and also because Congress abrogated sovereign immunity under the Copyright Remedy Clarification Act ("CRCA"), 17 U.S.C. §§ 501(a), 511, which provides, in relevant part, "Any State . . . shall not be immune, under the Eleventh Amendment of the Constitution of the

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8047 PSG (FFMx) | Date | March 12, 2009 |
|---|---|---|---|
| Title | Frank Romero v. California Department of Transportation | | |

United States." *Id.* at § 511(a).

Under the Eleventh Amendment, an unconsenting State is immune from suits brought in federal courts by its own citizens as well as by citizens of another state. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984), *superseded by statute on other grounds*. Caltrans is a California state agency. *Natural Res. Def. Council v. Cal. Dept. of Transp.*, 96 F.3d 420, 423 (9th Cir. 1996). Thus, it is entitled to sovereign immunity unless it can be shown that it waived its immunity or that Congress validly abrogated its immunity. *In re Jackson*, 184 F.3d 1046, 1048-49 (9th Cir. 1999).

A.   Waiver of Sovereign Immunity under the Eleventh Amendment

The Court first considers whether Caltrans has waived its sovereign immunity. A court will only find that there has been a waiver of sovereign immunity if there has been "an unequivocal indication that the State intends to consent to federal jurisdiction[.]" *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238, 105 S. Ct. 3142, 87 L. Ed. 2d 171 (1985), *superseded by statute on other grounds*. Consent can only be through express language or clear implication that leaves room for no other interpretation. *Id.* at 240.

Romero argues that Caltrans waived its sovereign immunity by accepting federal funds to build and maintain California's highways. These funds, according to Romero, included an allocation for mural restoration. Although unclear from the opposing papers, Romero seems to suggest that by receiving funds relating to mural restoration, Caltrans agreed to abide by the rules instituted under the CRCA, including waiver of sovereign immunity.

It is true that one way for a state to waive its immunity is to accept federal funds. *Clark v. State of Cal.*, 123 F.3d 1267, 1271 (9th Cir. 1997) (quoting *Atascadero*, 473 U.S. at 247). However, "mere receipt of federal funds cannot establish that a State has consented to suit in federal court." *Atascadero*, 473 U.S. at 246-47. Rather, the "funding statute [must] 'manifest a clear intent to condition participation in the programs funded under the Act on a State's consent to waive its constitutional immunity.'" *Id.* at 247; *see also Clark*, 123 F.3d at 1271. In this case, Romero has failed to point the Court to any provision in the relevant funding statute that manifests a clear intent to condition the State's participation on its consent to waive its Eleventh Amendment immunity.[1] Accordingly, as no statute clearly conditions Caltrans' receipt of these

---

[1]In fact, Romero has failed to point the Court to the specific statute that supposedly grants the State funds to use for mural restoration.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-8047 PSG (FFMx) | Date | March 12, 2009 |
|----------|------------------------|------|----------------|
| Title | Frank Romero v. California Department of Transportation | | |

federal funds on its consent to waive its Eleventh Amendment immunity, the Court finds that
Caltrans has not waived its sovereign immunity through its acceptance of federal funds.

B.     Congressional Abrogation of Sovereign Immunity under the Eleventh Amendment

Next the Court considers whether Congress abrogated the States' Eleventh Amendment
immunity in the CRCA.[1]  It is now well-established that Congress can abrogate a State's
sovereign immunity only if it has (1) unequivocally expressed its intent to abrogate the immunity
and (2) acted under a valid exercise of power.  *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 55,
116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996), *abrogated on other grounds*.  There appears to be no
dispute amongst the parties as to whether Congress has unequivocally expressed its intent to
abrogate the immunity; nor should there be.  The CRCA states, in relevant part:

> Any State . . . shall not be immune, under the Eleventh Amendment of the
> Constitution of the United States or under any other doctrine of sovereign
> immunity, from suit in Federal court . . . for a violation of any of the exclusive
> rights of a copyright owner provided by sections 106 through 122, . . . or for any
> other violation under this title.

17 U.S.C. § 511(a).  Courts have uniformly found, as this Court does now, that such unequivocal
language clearly manifests Congress intent to abrogate the States' sovereign immunity.
However, what the parties do dispute is whether Congress has acted under a valid exercise of
power.

As the Supreme Court clarified in *Seminole Tribe*, Congress cannot circumvent the
Eleventh Amendment restriction on judicial power under Article III by the exercise of powers
under Article I.  *Seminole Tribe*, 517 U.S. at 72-73.  However, Congress can abrogate sovereign
immunity when acting to enforce constitutional rights under section 5 of the Fourteenth

---

[1]To date, neither the Supreme Court nor the Ninth Circuit has addressed this issue.
Nonetheless, in addressing this issue the Court is not without guidance.  A number of district
courts and one circuit court have considered whether Congress abrogated sovereign immunity
under the CRCA.  *See, e.g.*, *Mktg. Information Masters, Inc. v. Bd. of Trustees of the Cal. State
Univ. Sys.*, 552 F. Supp. 2d 1088, 1094 (S.D. Cal. 2008); *Chavez v. Arte Publico Press*, 204 F.3d
601, 605 (5th Cir. 2000).  While the Court recognizes that these cases are not binding precedent,
the Court finds them to nonetheless be persuasive.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JS-6

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-8047 PSG (FFMx) | Date | March 12, 2009 |
|----------|----------------------|------|----------------|
| Title | Frank Romero v. California Department of Transportation | | |

Amendment.  *Id.* at 65.  It is Romero's position that that is exactly what Congress did in this case.  However, the Court disagrees.

Congress' power under section 5 is remedial, not substantive.  *City of Boerne v. Flores*, 521 U.S. 507, 519, 117 S. Ct. 2157, 138 L. Ed. 2d 624, (1997), *superseded by statute on other grounds.*  In determining whether, for purposes of Congress' enforcement power under section 5 of the Fourteenth Amendment, federal legislation is permissibly remedial or impermissibly substantive, there must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.  *Id.* at 520.  This determination can be made by looking at three factors: (1) the nature of the injury to be remedied and whether the state exhibited a pattern of constitutional violations; (2) Congress' consideration of the adequacy of state remedies to redress the injury; and (3) the coverage of the legislation.  *Chavez*, 204 F.3d at 605 (applying the analytical framework set forth in *Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 639-45, 119 S. Ct. 2219, 144 L. Ed. 2d 575 (1999)).

Romero contends that the CRCA was enacted in response to substantial evidence of copyright infringement by the States and their instrumentalities.  However, such does not appear to be the case.  When Congress enacted the CRCA, it held hearings to consider, *inter alia*, incidents of past and future copyright infringement by states.  *Mktg. Information Masters, Inc.*, 552 F. Supp. 2d at 1094.  These hearings demonstrated that, at most, states were only sporadically infringing upon citizens' copyrights.  *Id.*  Furthermore, not only was there a lack of evidence of a significant number of wholesale takings of copyright rights by States and their entities, *id.*, there was also a lack of evidence of a pattern of unremedied copyright infringement by states.  *Chavez*, 204 F.3d at 606.  Indeed, as the Fifth Circuit noted in *Chavez*, "[r]ather than expose a current epidemic of unconstitutional deprivations, the testimony before Congress worried principally about the *potential* for future abuse . . . and the concerns of copyright owners about that potential." *Id.* (internal citations omitted).  Thus, contrary to Romero's arguments otherwise, there was not substantial evidence of copyright infringement by the States and their instrumentalities.

Romero also argues that Congress determined that there were no available state remedies for copyright infringement.  Again, this does not appear to be the case.  As the Fifth Circuit noted in *Chavez*, there were only "two allusions" to state remedies in the legislative history of the CRCA.  *Id.*  Also, there was no evidence that Congress  considered other possible remedies in state courts—for example, claims for the unlawful taking of private property by the state government or breach of contract claims.  This led the Fifth Circuit to conclude then, as this

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-8047 PSG (FFMx) | Date | March 12, 2009 |
| --- | --- | --- | --- |
| Title | Frank Romero v. California Department of Transportation | | |

Court concludes now, that Congress barely considered the availability of state remedies for infringement when it enacted the CRCA.

Lastly, the Court examines the breadth of coverage of the legislation. *Florida Prepaid*, 527 U.S. at 646; *Chavez*, 204 F.3d at 607. It is Romero's position that Congress tailored the remedy to be provided to the magnitude of the harm to be prevented. The Court disagrees. The legislative record suggests that the CRCA does not respond to a history of widespread and persisting deprivation of constitutional rights "of the sort Congress has faced in enacting proper prophylactic § 5 legislation." *City of Boerne*, 521 U.S. at 526. Instead, Congress appears to have enacted this legislation in response to a handful of instances of state copyright infringement that do not necessarily violate the Constitution. Supreme Court jurisprudence indicates that a deprivation, to fit the meaning of the due process clause, must be intentional; a negligent act that causes unintended injury is not sufficient. *See Florida Prepaid*, 527 U.S. at 643-44. Rather than make an attempt to confine the reach of the CRCA by limiting the remedy to certain types of infringement, such as nonnegligent infringement or infringement authorized pursuant to state policy, Congress instead chose to subject States to expansive liability. As the Fifth Circuit observed in *Chavez*, the CRCA's "'indiscriminate scope' cannot be reconciled with the principle that legislation pursuant to the due process clause of the Fourteenth Amendment must be proportionate to legitimate section 5 ends." *Chavez*, 204 F.3d at 607.

In summary, the Court finds that although Congress expressed its unequivocal intent to abrogate the Eleventh Amendment enacting the CRCA, Congress did not have authority to exercise those powers under section 5 of the Fourteenth Amendment. Accordingly, Congress did not validly abrogate sovereign immunity under the CRCA.

IV.     Conclusion

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-8047 PSG (FFMx) | Date | March 12, 2009 |
|----------|------------------------|------|----------------|
| Title | Frank Romero v. California Department of Transportation | | |

For the foregoing reasons, Caltrans' motion to dismiss with prejudice Romero's complaint is GRANTED.[3]

**IT IS SO ORDERED.**

---

[3]Romero seeks leave to amend his complaint.  However, in this case, amendment would be futile as there is no way for Romero to amend his complaint whereby Caltrans could be sued under VARA in federal court.  Accordingly, Romero's request for leave is denied.  *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (observing that denial of leave to amend is proper when the court concludes that further amendment would be futile).